Good morning, Your Honors. May it please the Court. As you noted, we were here yesterday, and I had the good fortune of watching oral argument on related matters. One in particular was Janky v. Poop Deck, and that case dealt with attorney's fees awarded under the ADA. But it's kind of the opposite of this case, right? And even if a court has discretion, even if it has discretion to consider the absence of pre-litigation notice, why does it have to? Well, this case in particular is much more compelling a reason, and I'll tell you why that is. Unlike Janky v. Poop Deck, this is a case where the complaint was filed, and three weeks later, Del Taco submitted a Rule 68 offer, offering injunctive relief for any potential barrier to access that Mr. Deanda could identify. Not only that, but it offered a substantial cash award as well. The complaint did not identify the alleged barrier that the district court ultimately granted summary judgment in favor of Mr. Deanda on. Not only did the complaint not identify it, but the early neutral evaluation statement submitted by plaintiff didn't identify it. The Southern District has a meet-and-confer requirement for counsel to go to the premises and walk it and point out the alleged barriers to access. We did that. I drove to El Centro. I met Mr. Handy's colleague out there. We walked the premises. He didn't identify it. It wasn't until discovery, when we were well into discovery, the deposition of Mr. Deanda. And all of this was presented to the district court, which rejected your position in its exercise of discretion. So why is that an improper exercise of discretion, even if you wish to? I mean, it sounds like you're asking us really to look at it de novo. That is what I'm asking. It's because Doran versus Del Taco has been overruled. It has been overruled. But as we as has been discussed yesterday, does that mean that is completely irrelevant to factoring? Well, not everyone would agree that it is necessarily irrelevant. But to say that a court could, if it has a good reason to, consider a factor doesn't mean that everybody has to, does it? I mean, discretion works both ways. Discretion does work both ways. But in this case, we're asking the court to look at it de novo, because it is one of those situations, unlike Janke and unlike so many other cases, which was the point of Doran versus Del Taco in saying there is an abuse here. And both parties, defendants too, spent tens of thousands of dollars litigating this case. Can I ask you a question? You seem to be saying two different things, I think. Are you asking that, back to the lack of pre-filing notice, is that what you're saying the problem is that he didn't rely on that? Or are you saying something about this period afterwards? Which one are you saying, or both? I'm saying both. If there had been pre-filing notice, then Del Taco would have addressed the barrier. Well, first of all, there is a declaration saying there was pre-filing notice, is my understanding. In other words, there's a declaration where Mr. D'Andrea says that he complained to the manager, assistant manager, on more than one occasion. He took a photograph to Dem in July of 2004, and that manager said she was going to take care of the matter. He attached the photograph. Sure. That was addressing a completely different issue, which Del Taco addressed and which the parties both agreed was moot at the time of the summary judgment briefing. The single barrier that Mr. D'Andrea was successful on at summary judgment dealt with the tabletops inside the restaurant, and that wasn't identified to Del Taco until well into litigation, several, several months. And that was after all this had taken place. All the discovery, the early neutral evaluation, no pre-filing notice was given in that regard, and that is why our other argument was the Rule 68 offer should have been considered, because in light of the Moriarty case, it was... Well, that's exactly the problem that we run into when we don't receive pre-litigation notice, Your Honor. That's what discovery is for, and that's what, once you know there are some problems, and you've acknowledged that there are some, you know, presumably you can look around and see what else is required that hasn't been done. Well, the issue of notice is very difficult. I mean, assumedly the complaint gave notice, but the complaint didn't give notice. But conversely, if you can make an offer that says we're going to do A, B, and C, then the defendant, the plaintiff can accept that or reject that as a settlement of their complaint. But when you just say we're going to do whatever is noncompliant, but obviously there's a dispute about what's noncompliant, so it's no offer that anybody can react to, it doesn't seem to me to be worth anything. If you had been specific in what you were going to do, you would have accomplished some of the same purposes, because then you would have gotten a reaction as to whether that was adequate or not. But there's no way that somebody could respond intelligently to this offer. Had we identified as in a Rule 68 offer the issue that Mr. DeAnda had complained about in his complaint, that wouldn't have ultimately been what he complained about, because it turned out to be an issue. Well, I understand that. I'm just saying that the rules of this purported Rule 68 offer was not anything that could have resolved the litigation because it was so completely indistinct that nobody could accept or reject it as a settlement, because it doesn't – because there was no way that it could be reduced to a settlement. It was a settlement agreement as written. Even if that was true, and nevertheless, Del Taco went ahead and started addressing everything that Mr. DeAnda raised as litigation progressed, that would be what the early mutual evaluation conference is for and what the walk-through at the physical location was for, even assuming that was true. Del Taco intended, however, to make it as broad as possible so that it would address anything that Mr. DeAnda complained about. It didn't want to limit itself to A, B, and C because it turned – as it turned out, it was F that turned out to be the issue that Mr. DeAnda – you would have known it a long time before. I think that's the thrust of the questions. Well, that – and that is what the joint report for the early mutual evaluation addressed. And in that, we did address A, B, and C. I would like to reserve a minute for rebuttal. Certainly. You may reserve your own time. Mr. Handy? Good morning, Your Honors. Russell Handy, again, appearing before you on behalf of the appellee. First, I'd just like to state that the defense counsel has truly misstated the record. It's just not accurate. The – this case was filed on January 24, 2005. A Rule 68 offer came out on February 18th of 05. We prepared our E&E statement within three weeks, and the E&E statement, which is supplemental excerpt of record number five, page one, certainly identifies that front entryway, the main barrier. That's soon into the case. Then we met at the location. We went over all the – you know, a couple attorneys there, which is the purpose of the E&E. We identified the whole property. We identified other problems that our client hadn't even complained about as issues that we should be discussing. We offered a joint report three weeks later. So we're only three months into the case, and the joint report signed by both attorneys, a supplemental excerpt of record number seven, lists every item. They knew what this case was about from the very, very beginning. There's no question about whatsoever. This is the evidence in front of the district judge. They considered these arguments. He rejected these arguments. There's just no doubt about it that both the E&E statement by my office and the joint report by both offices identified every barrier in this case. There was no hiding the ball. If there was any confusion in the first month or month and a half of the case, it was quickly resolved. There's just no question about that. And the reason why this case didn't settle after all the issues were on the table is because defense never raised their initial offer, which was $5,500 for the entire case, damages, costs, attorney fees, everything involved. Never raised it until the end of the case after they had lost or after we had been granted a summary judgment motion. Then they offered to pay my client $18,500 in damages alone. So there's just no question that their initial offer was inadequate. All these things were before the district judge. It was a no-brainer to most of us there at the time. I don't think there's any merit in the appeal. I'd be happy to answer any questions. Is it correct that the front door issue as to which there was prior notice was resolved early on? It was ‑‑ I wouldn't say early on. It was resolved during the course of the case. In fact, the reason why we were granted summary judgment motion was that the defense was working very hard to moot everything out. In fact, that was an argument they made. We finally fixed everything. Everything's moot. And we simply pointed out everything's not fixed. Their evidence is incorrect. They were working hard throughout the case to get everything fixed. They didn't quite do it by the time of the summary judgment, or else perhaps the court would have decided that the ADA cause of action was moot, dismissed the supplemental claims, which is very common, go back to state court. But that didn't happen. I think by the time of the summary judgment motion about a year into the case, they had finally fixed the front entryway doors. I believe that's probably true. The point here is, of course, is that even if they moot that issue as far as injunctive relief goes, my client had a valid claim for damages. He had been there on 30 occasions. He had dealt with these barriers time and time again, complained about them. He had a very legitimate claim for damages that were still part of the case. So even though they moot the injunctive relief, there's still a very substantial issue to talk about, and that's what my client should be compensated. And they just never had a good faith offer on that score until the end of the case. And so the judge considered all these things. All these things were before him. I can't see anywhere where he abused his discretion. He took a knife to our attorney fees and cut it down by $20,000. He was very good. We didn't appeal it. We thought he had great discretion. And I just ---- Let me ask you something. If, in fact, the judge, a district judge can take pre-filing notice into account with regard to denying fees altogether, what impact does that have on plaintiff's lawyers? In terms of how they behave at that point. Well ---- In other words, if it's not ---- if SCAF is correct, which it obviously is the law, and you can't be the ground, the sole ground for denying fees, but if it were a ground, a coordinate ground with other things, how would that affect whether you take cases, whether you ---- how you litigate them, et cetera? Absolutely. Well, for one, if they're ---- and I see it happening. This is kind of anecdotal, but I see it happening. There's a number of judges in the central district that, for lack of a better word, do not like ADA cases. And their opinions are very slanted. And so people have been going to state court, avoiding that. In state court, you have the right to bounce a judge. And, you know, if there's a judge who just has an open bias against these types of cases, you can do a preemptory bounce 7-7. I guess what I meant more specifically is if you knew that pre-filing notice could be considered, would you give the pre-filing notice? Would you not take the case because you could get ---- you could have to spend a fair amount of time and not get recompensed? Would you ---- how does that incentive operate as an incentive or disincentive for the filing of these cases at all? Part of the problem is that there is some work that's invested in just getting to the point of right ---- when we receive a complaint from a client, what we do immediately is send out an investigator to make sure that, A, they're accurate about what they're complaining about, and, B, to take photographs to preserve the evidence. Because things change right away. And then they report to us and we'll talk to the client saying, these things you're complaining about aren't actionable. These things probably are. We'll take some intake notes. There's some work that's involved in getting to the point where you would either file a complaint or write a letter outlining the issues. Early in my office's practice, we always did that. We just, as a matter of course, we would write a letter or we'd ask our clients to write a letter. And sometimes we'd get response, but a lot of times people would just say, you know, I've been told I've been grandfathered in. There's a lot of misconceptions out there. Or they'll get some family friend attorney who will write a threatening letter. And there's a lot of work. You argue with that letter. You respond to it. There's a lot that gets done before you file the complaint. And then as more time went by, we've been doing this for a while at my firm, and now we're 18 years after the passage of the ADA. We don't feel like there's a moral or ethical obligation to have to go out there and argue about why they should follow the law, why they've been discriminating all this time. And here's the other problem. Don't you still send out the investigator to see if the complaints are true? Yeah, absolutely. So you do all that anyway, whether you're going to write the letter or not. Right. And if it's a good case, we're glad that we're going to get paid at some point for that work. And here's the other problem. The problem is that if you wrote the letters and it was resolved right away, you would never get paid for the work. That's right. And the other thing, too, is that so what should a letter include? If the letter said, okay. Do your clients ever, just like this individual, made complaints himself? So he did give notice to the copperstand ahead of time. And this is just totally outside the record, but is that pretty common that people who experience problems will say, you know, this is really a problem for me? Yeah. All of my clients do that now. We've told them it's much better if you complain and get it resolved without having to come to us first. And it makes the case stronger if you've complained and complained repeatedly. I mean, we just feel better being a settlement company. And isn't that pre-litigation notice? That is pre-litigation notice. It is. It is, although the ADA Notification Act. It doesn't require you to expend work or time or investigators. Although the ADA Notification Act that's been proposed is a certified letter outlining, citing. I know that, but we're not there. Right. And so, you know, there's a question about how much notice is required. And the other thing, too, is that the case laws develop that. Let's say my client can't get in through the front door. Most of my clients are in wheelchairs, not all of them. But let's say they can't get into a restaurant or they can't get into a place because of the unramped steps. They have no idea what's inside. And so if they just gave notice on the stairs, and so how long do you provide a company with the opportunity to do that? Then they go inside, and then maybe there's problems inside. And so one thing that's nice is that if a firm has not assessed their properties, one thing a lawsuit does do is you walk away from that property as completely fixed. The other thing, too, is this is the other issue. In California, which all these cases are, at least where my firm is located, there's also a legitimate claim for damages under the state law claim. Whether it's UNRRA, it depends on the intent, might take that away, but under the California Disabled Persons Act. So does the pre-litigation demand letter also demand that money? My client's also entitled to $1,000 because he went there and he's entitled to that, pay that or else we'll file the lawsuit. So how do you wrap those things into the case? And so it's a thorny issue. There's no doubt about it. It'll be interesting to see if it ever passes the legislature. But in this case, my client did complain, complained repeatedly. The defense asked the court to take into account that there was no pre-litigation notice. The court did take it into account. He cited the case law. I mean, it's clearly in his mind. It wasn't something he ignored. But he just didn't exercise any discretion to rely on that factor. And I'm glad that he didn't and he shouldn't have. Well, I guess one could say that there was pre-litigation notice. That is, the person complained and said, you've got a problem. Put them on notice. Didn't sandbag them at all. It's in the record. He's sworn his declaration that he complained on a number of occasions. He even took a photograph and wrote that and explained what his problem was. And nothing was done until a lawsuit was filed, and that's pretty common in our experience. Thank you, counsel. Thank you. Ms. Wecker, you have some time remaining. Thank you. And I'm not standing here today arguing that fees should have been denied altogether, because I acknowledge Del Taco did address a barrier that Mr. DeAnda had complained about, the photograph of the front entrance. And we're clearly in the realm of discretion. Once you acknowledge that there were fees owed, and the question is the amount, we're squarely into discretion, right? And my point here today is, as addressed in my supplemental letter with the Martinez v. G. Maroney case, Mr. Handy had mentioned that his client identified every barrier and had visited the store 30 times, which begs the question, the one issue that he did win on summary judgment, the tabletops, wasn't identified until much later in the case. Had that been identified up front, the situation would have been very different. I thought at the time of the summary judgment motion, it had certainly been identified by then, and you were arguing that you were in compliance, right? We were arguing that we were working towards compliance. And by the time of the hearing, the tabletops had been completely remediated. But that issue hadn't been identified. I thought the district court said they hadn't been completely remediated. The district court said that it was conclusory evidence, nevertheless, for purposes of finding that they were readily, achievably replaced, they found pretty much that they were compliant. I mean, they didn't go out right. They said that we can't assume that these are compliant because we're not going to take what our facilities, Del Taco's facilities head had said in his declaration in support of our motions. So he found that you hadn't established that they were compliant. That's what he found. I'm sorry? He found that you had not established that they were compliant. He found that it was not in compliance. You had to establish. Correct. So, therefore, that issue had been identified. You didn't establish that it was compliant. So, in fact, you had a chance to remedy it, and you did. I mean, that was the ‑‑ I understand you're not comfortable with that conclusion, but that was the conclusion. That was the district court's conclusion. For business reasons, we didn't pursue appeal on that. My only point here today is that the fees could have been substantially reduced on both ends if his client, who had visited the store 30 times as he purports to have visited, had identified his barriers up front, and the parties could have worked out the issues much, much sooner in the case. Thank you, counsel. Thank you. The case just argued is submitted, and we thank you both for your arguments. Thank you. We'll move next to Impact Warehouse Lending Group v. Katie Swiss, 1st Boston, LLC.
judges: Hall, Graber, Berzon